UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERIN PAPKEE, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) No. 2:20-cv-00006-DBH |
| MECAP, LLC, d/b/a MILK STREET CAPITAL, and SCOTT LALUMIERE, | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM DECISION AND ORDER ON MOTION FOR SERVICE BY PUBLICATION

In this action (i) alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Maine Whistleblowers' Protection Act ("WPA"), 26 M.R.S.A. § 831 *et seq.*, (ii) seeking unpaid wages pursuant to 26 M.R.S.A. § 664, and (iii) alleging tortious interference with a valid contract or prospective economic advantage, *see* Complaint, Jury Trial Requested, Injunctive Relief Requested ("Complaint") (ECF No. 1) ¶¶ 1, 133-44, plaintiff Erin Papkee[1] moves to serve defendant Scott Lalumiere by "publication in the *Portland Press Herald*, a newspaper of general circulation in Cumberland County, State of Maine," and use of an online database, https://www.mainenotices.com/, *see* Motion for Service by Publication ("Motion") (ECF No. 5) at 3-4 ("legal notices placed in the *Portland Press Herald* are included in the statewide database"). Following a review of the record, I grant the Motion with modifications and direct that the plaintiff file the required proposed order.

---

[1] The plaintiff states that she was known as Erin Leigh Mancini at the time of the events at issue. *See* Complaint ¶ 4.

1

## I. Applicable Legal Standard

"Under Federal Rule of Civil Procedure 4(e), service may be accomplished by delivering a copy of the summons and the complaint to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, [or] delivering a copy to an agent authorized by appointment or by law to receive service of process[.]" *Edson v. Riverside Psychiatric Ctr.*, No. 1:16-cv-00079-JAW, 2016 WL 3257003, at *2 (D. Me. June 13, 2016); Fed. R. Civ. P. 4(e)(2). Service may also be accomplished "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district [court] is located or where service is made." *Edson*, 2016 WL 3257003, at *2; Fed. R. Civ. P. 4(e)(1).

Maine law allows service by alternate means "on motion upon a showing that service cannot with due diligence be made by another prescribed method[.]" Me. R. Civ. P. 4(g)(1). To meet that standard, the movant must provide "a draft, proposed order to provide the requested service by alternative means," containing the content specified in Rule (4)(g)(2), as well as an affidavit showing that (i) the movant "has demonstrated due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute[,]" (ii) "[t]he identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading process[,]" and (iii) "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1)-(2).[2]

---

[2] The plaintiff failed to provide the proposed order required by Me. R. Civ. P. 4(g)(1), in itself a basis on which her motion could have been denied. *See, e.g.*, Memorandum Decision and Order on Motion for Alternative Service (ECF No. 7), *People's United Bank, Nat'l Assoc. v. Alpert*, No. 2:19-cv-00528-JDL (D. Me. Dec. 26, 2019) (denying a

The Law Court has observed that, because of societal and technological changes, "service by publication has become less likely to achieve actual notice of a lawsuit" and, therefore, "also less likely to meet the requirements of due process." *Gaeth v. Deacon*, 2009 ME 9, ¶ 26, 964 A.2d 621, 628. As such, it stated, "service by publication in a newspaper is now a last resort that a party should attempt only when it has exhausted other means more likely to achieve notice." *Id.*

## II. Background

On January 8, 2020, Ms. Papkee, represented by Chad T. Hansen, Esq., filed the instant complaint against her former employer, MECAP, LLC, doing business as Milk Street Capital, and its sole shareholder and manager, Scott Lalumiere. Complaint ¶¶ 15-19. The Complaint describes MECAP as a "Maine limited liability corporation" with its "principal place of business in the City of Portland[.]" *Id*. ¶ 5. *See also* Motion at 1 (describing Mr. Lalumiere as MECAP's owner and manager; stating that MECAP "ceased operations following Plaintiff's departure but before Plaintiff filed suit in this matter").[3]

On March 31, 2020, Attorney Richard Olson accepted service on behalf of MECAP, as its Registered Agent. Proof of Service (ECF No. 4). On February 7 and 21, 2020, Attorney Hansen emailed Attorney Olson "regarding the possibility of cooperation in serving Mr. Lalumiere with waiver of service or other cooperative means of service[,]" but Attorney Olson did not respond to those requests. Affidavit of Chad T. Hansen ("Hansen Aff.") (ECF No. 5-1), attached to Motion, ¶ 2.

---

motion for alternative service without prejudice for failure to attach a proposed order pursuant to Maine Rule of Civil Procedure 4(g)). As noted below, the plaintiff is directed to file the missing proposed order in the form required.
[3] Because the plaintiff uses the terms "shareholder" and "owner" interchangeably in describing Mr. Lalumiere's relationship with MECAP, and the use of either or both descriptions is not outcome-determinative, I have done the same.

Barbara Lelli, an in-house investigator working with Attorney Hansen, "went to the former location of MECAP on Middle Street in Portland and confirmed with persons who currently occupy the office that MECAP, LLC and Mr. Lalumiere no longer occupied the premises." *Id*. ¶ 3.

On April 19, 2019, Ms. Papkee filed a complaint of discrimination against MECAP with the Maine Human Rights Commission ("MHRC") alleging unlawful whistleblower retaliation. Complaint ¶ 11. The MHRC issued a notice of right to sue with respect to that complaint on or about January 7, 2020. *Id*. ¶ 12. During the MHRC's investigation of this matter, Mr. Lalumiere represented that he resided at an apartment on Veranda Street in Portland. Hansen Aff. ¶ 4. Through informal investigation, however, Attorney Hansen discovered that Mr. Lalumiere might be living at his mother's residence in Cumberland, Maine. *Id*. ¶ 5. Attorney Hansen requested that the Cumberland County Sheriff's Department ("Sheriff's Department") serve Mr. Lalumiere at the Veranda Street apartment and at his mother's residence in Cumberland, Maine, but the Sheriff's Department reported that it made multiple attempts to serve him at both locations without success. *Id*. ¶¶ 6-7.

Attorney Hansen subsequently retained Joseph Thornton, a private investigator, to assist in locating and serving Mr. Lalumiere. *Id*. ¶ 8. Mr. Thornton and his colleague Allan Goodman reported that they discovered through "database searches, including with the Maine Department of Motor Vehicles to obtain license information and registrations[,]" that Mr. Lalumiere resided at "another residence in Cumberland, Maine[.]" *Id*. ¶ 9. Mr. Goodman reported that he "visited the new Cumberland address on multiple locations [sic] and confirmed with an occupant that Mr. Lalumiere had not lived there for years." *Id*. ¶ 10.[4] Mr. Goodman also visited Mr. Lalumiere's

---
[4] I assume that "multiple *locations*[,]" Hansen Aff. ¶ 10 (emphasis added), is a scrivener's error and construe it to mean "multiple *occasions*."

mother's residence but observed no evidence, such as the presence of his vehicle, that he was living there. *Id.* ¶ 11. Mr. Goodman taped a copy of the summons and Complaint to the door of the mother's residence and, upon later returning, observed that it had been removed. *Id.*

As of April 16, 2020, Attorney Hansen had not received notice from Mr. Lalumiere that he had received the copy of the summons and Complaint. *Id.* ¶ 12.

### III. Discussion

The plaintiff, who seeks to publish notice for three consecutive weeks in the *Portland Press Herald*, a newspaper widely circulated in, *inter alia*, Cumberland County, Maine, and, by virtue of that publication, on the online database for legal notices, https://www.mainenotices.com/, *see* Motion at 3-4, has shown that, in the wake of the efforts she has already made, service of Mr. Lalumiere "cannot with due diligence be made by another prescribed method[.]" Me. R. Civ. P. 4(g)(1).

While additional steps arguably could have been taken to obtain personal service, the likelihood that Mr. Lalumiere received actual notice of the summons and complaint as a result of the steps already taken by Ms. Papkee justifies service by publication and alternative means in this instance.[5] *See* Me. R. Civ. P. 4(g)(1)(A)-(B); *MATSCO*, 597 F. Supp. 2d at 162 (acknowledging that there are no "ironclad prerequisites in an immutable list of steps to be undertaken" and that, instead, the sufficiency of the plaintiff's attempts to effectuate service "depends on the factual circumstances of the case").

---

[5] Those additional steps might have included, for instance, attempting to determine whether Mr. Lalumiere provided forwarding addresses to the United States Postal Service, utility companies, or current tenants/landlord of the Veranda Street and Cumberland residences or former MECAP office. *See*, *e.g.*, *Camden Nat'l Bank v. Reid*, No. 2:13-cv-376-DBH, 2014 WL 1320944, at *2 (D. Me. March 28, 2014) (motion denied because the movant had failed to show that it had taken "even simple steps . . . to locate the defendant such as contacting the defendant's former landlord, the defendant's brother or his brother's guardian, or engaging a private investigator"); *MATSCO v. Brighton Family Dental*, P.C., 597 F. Supp. 2d 158, 162 (D. Me. 2009) (motion denied when "[a] number of avenues [did] not appear to have been exhausted[,]" such as contacting utility companies and querying whether any forwarding address had been left with the Postal Service). As discussed herein, this case is distinguishable given its factual circumstances.

Most striking is that MECAP has been served, rendering it likely that Mr. Lalumiere, its sole owner and manager, has actual knowledge of this suit and is avoiding service of process. *See* Me. R. Civ. P. 4(g)(1)(B); Complaint ¶ 16. Beyond this, the MHRC conducted an investigation into Ms. Papkee's whistleblowers' claim in which Mr. Lalumiere participated by, at the least, providing a home address. The MHRC then issued a right to sue letter in January 2020 that also could have signaled to Mr. Lalumiere that a lawsuit was imminent. Finally, Ms. Papkee's agents attempted on multiple occasions to serve Mr. Lalumiere at the Veranda Street residence he indicated was his address during the MHRC's 2019-20 investigation as well as at his mother's residence, where he was purportedly subsequently residing. They went so far as to leave a copy of the summons and complaint taped to the door of his mother's residence, which they confirmed was removed from the door. Finally, Ms. Papkee has attempted service through the Sheriff's Office and two private investigators on multiple visits to Mr. Lalumiere's Veranda Street and Cumberland County addresses.

Mindful that service by publication is a last resort, to be deployed when "it is not reasonably possible or practicable to give more adequate warning[,]" *Gaeth*, 2009 ME 9, ¶ 24, 964 A.2d at 628, I conclude that such service, coupled with additional provisos described below and the efforts Ms. Papkee has already made, is reasonably calculated to provide actual notice of the pendency of the action and is the most practical manner of effectuating notice of the suit, *see* Me. R. Civ. P. 4(g)(1)(C):

(i) publication for three consecutive weeks in the *Portland Press Herald* and its corresponding online legal notices database, and

(ii) mailing a copy of this order, the summons, and the Complaint to the Veranda Street address, Mr. Lalumiere's mother's address, and to Attorney Richard Olson *via* First Class U.S. Mail and email.[6]

---

[6] In light of the understandable social distancing concerns expressed by Ms. Papkee, *see* Motion at 3, and stay-at-home orders related to COVID-19, the plaintiff is *not* ordered to leave copies at the Veranda Street address, Mr.

### IV. Conclusion

For the foregoing reasons, the Motion is **GRANTED**.  The plaintiff shall serve defendant Scott Lalumiere by (i) publication for three consecutive weeks in the *Portland Press Herald* and its corresponding online legal notices database, https://www.mainenotices.com/, and (ii) mailing a copy of this order, the summons, and the Complaint to the Veranda Street address, Mr. Lalumiere's mother's address, and to Attorney Richard Olson *via* First Class U.S. Mail and email in accordance with Maine Rule of Civil Procedure 4(g).  The defendant shall have forty-one (41) days from the date of first publication of the notice in the *Portland Press Herald* to answer the Complaint.  The plaintiff shall also file, by May 21, 2020, the form of proposed order that should have been attached to the Motion.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 7th day of May, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

Lalumiere's mother's address, or with Attorney Richard Olson.  *See*, *e.g.*, *Spencer v. City of Cibolo*, SA-20-CV-00350-JKP, 2020 WL 2043980, at *1 (W.D. Tex. Apr. 27, 2020) (granting movant's request to order service through mail and e-mail but not personal service given governmental stay-at-home orders arising from COVID-19 pandemic).