# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ERIN PAPKEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:20-cv-00006-NT |
| | ) |
| MECAP, LLC d/b/a MILK STREET | ) |
| CAPITAL, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before me is the Plaintiff's motion for summary judgment ("**Pl.'s Mot.**") (ECF No. 45). For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

I begin with some procedural history and an analysis of which facts are appropriate for me to consider in evaluating the Plaintiff's motion. With that background in mind, I then draw from the record the facts that I take as true for purposes of summary judgment.

### I.   Procedural History

In January 2020, Plaintiff Erin Papkee filed her Complaint against Defendants MECAP, LLC d/b/a Milk Street Capital ("**MECAP**"), and the sole member of MECAP, Scott Lalumiere. Compl. (ECF No. 1); Stipulated Material Facts ("**SMF**") ¶ 2 (ECF No. 47). The Defendants filed counterclaims against the Plaintiff, and the Plaintiff

responded by filing reply counterclaims against the Defendants. Countercls. (ECF Nos. 14, 15)[1]; Reply Countercls. (ECF No. 19).

Discovery commenced, but the Defendants' participation in discovery was extraordinarily limited. In response to the Plaintiff's forty interrogatories, the Defendants offered twelve substantive responses, only two of which were longer than two sentences. Objs. and Resps. to Pl.'s First Set of Interrogs. of Defs./Countercl. Pls. MECAP and Scott Lalumiere ("**Resps. to Interrogs.**") (ECF No. 46-2). One of those longer responses identified the five witnesses that the Defendants intended to call at trial, all of whom were expected to testify about the quality of Ms. Papkee's work. Resps. to Interrogs. 4. The Plaintiff also made forty-four requests for the production of documents. Objs. and Resps. to Pl.'s First Req. for Produc. of Docs. of Defs./Countercl. Pls. MECAP and Scott Lalumiere (ECF No. 46-2). As far as I can tell, the Defendants produced no relevant documents. Pl.'s Reply to Defs.' Statements of Material Facts ("**Pl.'s Reply to DSOMF**") 2, 4–6, 8–11, 13–14, 16–18, 20–23, 25–28, 30–33, 35–38, 40–43, 45–47, 49–52, 54, 56, 60–65, 67, 69, 71, 72, 74–76, 79–83, 85–89, 92–97, 99–101 ("Defendants did not produce any documents as requested by Plaintiff.") (ECF No. 59). The Defendants did provide some additional information in proceedings before the Maine Human Rights Commission ("**MHRC**") through an affidavit by Mr. Lalumiere, responses to requests for information, and responses to

---

[1]    Both Answers and Counterclaims are labeled "Answer and Counterclaim of Defendant Scott Lalumiere," but it is clear from the content that one is supposed to be Mr. Lalumiere's and the other is supposed to be MECAP's (collectively, the "**Answers**"). *See* Answer and Countercl. of Def. Scott Lalumiere 1 (ECF No. 14); Answer and Countercl. of Def. [MECAP] 1 (ECF No. 15).

the Plaintiff's Statement of Particulars. Defs.' Doc. Produc. (collectively, the "**MHRC Documents**") (ECF No. 62-2).

As a result of the Defendants' limited participation in discovery, the Plaintiff moved to dismiss the Defendants' counterclaims and requested sanctions. Pl.'s Mot. to Dismiss Defs.' Countercls. and for Sanctions for Failure to Produce Disc. Ordered by the Ct. (ECF No. 28). The Defendants acknowledged that their inability to "devote the resources and attention necessary to pursue" their counterclaims warranted dismissal of those claims but requested that the Court defer ruling on the imposition of sanctions. Resp. to Mot. to Dismiss Countercls. and for Sanctions ("**Defs.' Resp. to Mot. to Dismiss**") (ECF No. 29). Ultimately, this Court dismissed the Defendants' counterclaims without prejudice and, as relevant here, prohibited the Defendants "from presenting . . . in response to . . . any dispositive motion any evidence that they were required to, but did not, provide in their initial disclosures in accordance with Federal Rule of Civil Procedure 26(a)" or "that they were required to, but did not, provide in response to the plaintiff's written discovery requests," except for information "otherwise known to the plaintiff" (the "**Discovery Sanction Order**"). Order Affirming Recommended Decision of the Magistrate Judge (ECF No. 38).

The Plaintiff has now moved for summary judgment on all of her claims and on her reply counterclaims, which the Defendants oppose.[2] On January 7, 2022, I held

---

[2]     The Defendants' opposition is entitled "Defendant Scott Lalumiere's Response to Plaintiff's Motion for Summary Judgment," but it says that "the above captioned defendants . . . oppos[e] . . . the Plaintiff's Motion." Def. Scott Lalumiere's Resp. to Pl.'s Mot. for Summ. J. ("**Defs.' Opp'n**") 1 (ECF No. 50). As a result, I construe this to be not only Mr. Lalumiere's opposition, but MECAP's as well.

a conference regarding the parties' summary judgment briefing (ECF No. 61). During this conference, I gave the Defendants the opportunity to respond to any of the Plaintiff's requests to strike and gave the parties the opportunity to correct errors in their prior filings. I also warned the Defendants that any information they provided in support of their opposition to the Plaintiff's motion needed to comply with the Discovery Sanction Order. As a result, I instructed the Defendants to ensure that all of the facts on which they were relying to oppose the Plaintiff's motion had previously been disclosed to the Plaintiff, to the extent they needed to be. And I also instructed the Defendants to provide me with any documentation concerning these earlier disclosures for me to be able to assess what the Defendants had previously disclosed. In response, the Defendants provided me with their responses to the Plaintiff's interrogatories (ECF No. 61-1), the MHRC Documents, and a decision from the Maine Department of Labor regarding the Plaintiff's eligibility for unemployment benefits (ECF No. 62-2, at 12–13). Because this is the only documentation that the Defendants have provided to me, I have assumed that any information not found in these documents was not previously disclosed to the Plaintiff. That means, pursuant to the Discovery Sanction Order, the Defendants are barred from relying on any information not contained in these documents unless that information was otherwise known to the Plaintiff.

## II.   The Summary Judgment Record

Ordinarily, at this point in an opinion on a motion for summary judgment, I would launch into a recitation of the facts in the light most favorable to the non-movant, and I would point out disputed facts and resolve any requests to strike in

footnotes. However, because of the Discovery Sanction Order and the state of the record, I devote an entire section of this opinion to an analysis of whether each material fact is adequately supported or controverted and whether it is admissible under the Discovery Sanction Order.

Because of the Defendants' parsimonious production of documents and information, and because it appears that none of the parties opted to take any depositions, the summary judgment record before me is thin. In support of her Statement of Facts ("**PSOMF**") (ECF No. 46), the Plaintiff puts forward one affidavit (her own), two strings of emails, and copies of the Defendants' responses to the Plaintiff's Request for Production of Documents and to the Plaintiff's interrogatories. In support of their Statement of Facts ("**DSOMF**") (ECF No. 51), the Defendants put forward a single document, a declaration by Mr. Lalumiere (the "**Lalumiere Declaration**"). Lalumiere Decl. (ECF No. 52). The Defendants also rely entirely on the Lalumiere Declaration in attempting to refute portions of the PSOMF.

The Defendants raise no objections to my consideration of Ms. Papkee's affidavit or the documents she attaches to it. Ms. Papkee, on the other hand, lodges a number of objections to the Lalumiere Declaration. First, she argues that because this document was not produced in the course of discovery, it violates the Discovery Sanction Order and should not be considered. Pl.'s Reply to DSOMF *passim*. I reject this argument out of hand. There is nothing wrong with Mr. Lalumiere swearing out a declaration to support his opposition to the Plaintiff's motion for summary judgment, and he had no obligation to produce this declaration any earlier than he

5

did. *See Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 153 (D. Me. 2003) ("Additional information may be provided by an affidavit submitted in opposition to a motion for summary judgment so long as the affiant did not testify at [a] deposition that no such additional information existed."). Because this is the only objection that the Plaintiff raises with respect to DSOMF ¶¶ 1, 2, and 3, I accept these statements of fact as true.[3]

Second, the Plaintiff argues that even if the Lalumiere Declaration does not itself violate the Discovery Sanction Order, almost all of the information proffered within it does. Pl.'s Reply to DSOMF *passim*. This second argument leads to nearly the same outcome as the first—if the key parts of the Lalumiere Declaration are inadmissible, then the document is of little more value than if the document itself is inadmissible.[4] Some of the statements to which the Plaintiff objects are based on Mr. Lalumiere's own personal knowledge (e.g., statements made by him, statements made to him by the Plaintiff, and his observations). I disagree with the Plaintiff's

---

[3]      Pursuant to the Local Rules, parties must support or oppose any statements of material fact with citations to the record. D. Me. Loc. R. 56(f). Facts that are improperly controverted are deemed admitted. D. Me. Loc. R. 56(f). When a party contends that an individual statement of fact should be disregarded (as the Plaintiff has done here with each of the Defendants' statements of fact), that party must, "[w]ithout prejudice to the determination of the request to strike . . . admit, deny or qualify the statement" and must support any qualifications or denials with a citation to the record.  D. Me. Loc. R. 56(e), (f).
        The Plaintiff requests to strike each of the Defendants' statements of fact while also denying each of them. But the Plaintiff does not support any of her denials with citations to the record, despite twice having an opportunity to do so. As a result, any of the Defendants' statements of fact that are not stricken are deemed admitted, due to the lack of an adequate denial by the Plaintiff.

[4]      The Plaintiff raises this objection to paragraphs six through twenty-seven of the twenty-eight-paragraph Declaration of Scott Lalumiere ("**Lalumiere Declaration**"). Pl.'s Reply to Defs.' Statements of Material Facts ("**Pl.'s Reply to DSOMF**") 58–102 (ECF No. 59). But because the six paragraphs to which the Plaintiff does not raise this objection do not deal with the substance of the Plaintiff's claims, disregarding these twenty-two paragraphs renders the Lalumiere Declaration worthless.

contention that Mr. Lalumiere was necessarily required to disclose at an earlier time his perceptions of the various events at issue. The Plaintiff makes no claim that Mr. Lalumiere was unavailable for a deposition. As a result, I consider any statements by Mr. Lalumiere based on his personal knowledge and otherwise admissible, so long as they do not contradict any of Mr. Lalumiere's admissions or evidence that he has put forward. *See Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 315 (1st Cir. 2016) ("[A] party's affidavit may be self-serving and yet, still present genuine issues of fact if it contains relevant information of which the party has first-hand knowledge."). Other statements in the Lalumiere Declaration are based on information that *was* previously disclosed by the Defendants to the Plaintiff, either in response to the Plaintiff's interrogatories or via the MHRC Documents. As a result, with one exception,[5] I treat the Defendants' responses as effectively disputing PSOMF ¶¶ 5, 6, 7, 9, 14, 15, 24, 31, 32, 34, 35, 37, 46, 50, 52, 55, 59, 60, 61, and 68 and parts of PSOMF

---

[5]    I do not take as true the Defendants', or, for that matter, the Plaintiff's, statements of law masquerading as facts/responses, such as the Plaintiff's characterization of herself as an employee (Plaintiff's Statement of Fact ("**PSOMF**") ¶ 6 (ECF No. 46)), the Defendants' characterization of her as an independent contractor (Defendants' Response to PSOMF ¶ 7), or the Plaintiff's discussion of the integration of her services into MECAP's business operations (PSOMF ¶ 13).

¶¶ 38, 51, 54, 58, and 69.[6] Similarly, I accept as true DSOMF ¶¶ 8, 9, 11, 12, 13, 14,
19, 22, 23, 25–37, and 39 and parts of DSOMF ¶¶ 4, 6, 16,[7] 20, 21,[8] and 38.

However, I agree with the Plaintiff that some of the facts put forward in the
Lalumiere Declaration are based on information that should have been disclosed in
discovery, and they are thus inadmissible. These assertions are not based on Mr.
Lalumiere's personal knowledge but rather on speculation or on information that Mr.
Lalumiere appears to have learned from other persons and/or documents, information
that was required to be—but was not—disclosed in discovery. *See* Fed. R. Civ. P.
56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made
on personal knowledge [and] set out facts that would be admissible in evidence . . . .");
*cf. Garmon*, 844 F.3d at 315 (finding that plaintiff-employee's assertions about his
employer's decision making process were not admissible evidence due to a lack of
personal knowledge). Because these parts of the Lalumiere Declaration are not

---

[6]     As I explain in greater detail below, portions of PSOMF ¶¶ 38, 51, 54, 58, and 69 are deemed admitted.

[7]     Paragraph 16 of the Defendants' Statement of Facts ("**DSOMF**") (ECF No. 51) is based on paragraph 13 of the Lalumiere Declaration, which is ambiguous. In an effort to construe paragraph 13 in the light most favorable to the Defendants (as the opponents to summary judgment), I understand paragraph 13 to mean that Ms. Papkee told Mr. Lalumiere that she intended to work for others and that she was pursuing her own real estate projects. But while DSOMF ¶ 16, purports to rely on paragraph 13 of the Lalumiere Declaration, it takes some liberties in asserting that Ms. Papkee *did* perform work for other companies, not just that she intended to. The contention that Ms. Papkee was performing work for other companies is unsupported, and I reject it.

[8]     Part of DSOMF ¶ 21—that Mr. Lalumiere was not trying to defraud anyone—is based on Mr. Lalumiere's perception and is admissible evidence. But the other part of DSOMF ¶ 21—that Ms. Papkee never said she was unwilling to participate in fraud—is contradicted by the record. Mr. Lalumiere admits that Ms. Papkee specifically told him—*in an email that he acknowledges receiving*—that she needed exact numbers so that they were not "submitting false info[rmation]." PSOMF ¶ 36. It is clear from that statement that she was concerned about fraud and notified Mr. Lalumiere of this concern. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

admissible, the Defendants cannot properly rely on them to support any of their own statements of fact or to refute any of the Plaintiff's. As a result, DSOMF ¶¶ 5, 7, 10, 15, 17, 18, and 24 and parts of DSOMF ¶¶ 4,[9] 6,[10] 20,[11] and 38[12] are stricken, and PSOMF ¶¶ 3, 17, 18, and 19 and part of PSOMF ¶ 4[13] are deemed admitted.[14]

---

[9]     In DSOMF ¶ 4, the Defendants outline what they believe Ms. Papkee's duties were. The Defendants were required to disclose this information in response to Plaintiff's Interrogatory 17. The Defendants made some disclosures with regard to Ms. Papkee's duties in response to that interrogatory, in response to Plaintiff's Interrogatory 21, and in the MHRC Documents. But some of the information in DSOMF ¶ 4 was not previously disclosed, specifically that Ms. Papkee evaluated proposals for projects and made recommendations about the scope or budget of projects, or that she was responsible for evaluating the extent and quality of work performed so that MECAP knew how much to pay. While it is true that the Discovery Sanction Order allows the Defendants to rely on information that is "otherwise known to the Plaintiff," nowhere in the information provided to me is it clear that it was otherwise known to Ms. Papkee that these were part of her duties. While Ms. Papkee was, of course, aware of what her own duties were, the fact that the Defendants say these were her duties does not make it so. If these were actually Ms. Papkee's duties (and thus known to her), they presumably would have been—and certainly should have been—included in the Defendants' response to Plaintiff's Interrogatory 17. I thus cannot conclude that Ms. Papkee was necessarily aware that these were her duties and that the Defendants can be absolved of this lack of prior disclosure.

[10]     Based on the documents provided to me, it does not appear that any of the information in DSOMF ¶ 6 was disclosed to the Plaintiff. I thus disregard all of the information in this statement of fact except the statement that Ms. Papkee needed to visit construction sites. It is obvious from Ms. Papkee's affidavit that she was aware that she was required to make—and did make—these site visits as a part of her job.

[11]     Most of the information in DSOMF ¶ 20 was previously disclosed to the Plaintiff or was not required to be. But one piece of information in DSOMF ¶ 20 not only was not previously disclosed to the Plaintiff, but also contradicts information that was. DSOMF ¶ 20 contends that the judge at a damages hearing in a lawsuit involving MECAP "did not say that [she] needed more information." However, the Defendants previously admitted that that judge did require "more proof." Defs.' Resp. to Pl.'s Statement of Particulars ¶ 37 (ECF No. 62-2).

[12]     As I explain, Mr. Lalumiere's opinions of Ms. Papkee's work lack sufficient foundation. The portion of DSOMF ¶ 38 about Ms. Papkee's quality of work is stricken.

[13]     Mr. Lalumiere adequately denies that he was aware that Ms. Papkee was working more than forty hours per week. That part of PSOMF ¶ 4 is not deemed admitted.

[14]     These statements of fact primarily relate to the number of hours that Ms. Papkee worked and the quality of her work. The Defendants seek to deny that Ms. Papkee worked more than forty hours per week and to contend that she did not perform her job satisfactorily. With regard to the number of hours Ms. Papkee worked, the Defendants' basis for their denial relies entirely on Mr. Lalumiere's unsupported declaration that, based on his experience, *she could not have* worked—or *should not have been* working—more than forty hours per week. *See, e.g.*, Lalumiere Decl. ¶ 8 ("[I]t is inconceivable to me that she could have worked an 'average of 45 hours' per week for MECAP at any time."), ¶ 10 ("I continued to assume that the [sic] MECAP was not providing her with even forty hours of work per

Third, the Plaintiff raises various other objections to sporadic parts of the Lalumiere Declaration, such as relevance (paragraph nine and parts of paragraphs six and ten) and that Mr. Lalumiere is only offering an opinion or conclusory statement rather than a factual assertion (paragraph eight and parts of paragraphs ten and fourteen). I have reviewed and considered all of the Plaintiff's objections and requests to strike, but I need not specifically address each of them because they are

---

week."). But Mr. Lalumiere's assumptions about how much Ms. Papkee *should have been* working are not evidence of how much she actually *was* working. The Defendants never dispute that an eligible employee is required to be paid overtime if that employee *actually* works more than forty hours per week, *see* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."), regardless of whether some other employee could have completed the same tasks within a span of forty hours. Moreover, Mr. Lalumiere makes clear that he considered Ms. Papkee's work to be "largely independent" and that he believes that he gave her "wide latitude" and "a significant amount of discretion" in how she performed her job. Lalumiere Decl. ¶ 6. As a result, it is unsurprising that he can only assume how many hours she actually worked. In addition, Mr. Lalumiere bases his opinions about how much Ms. Papkee should have been working mostly on his experience. That information about his experience is something he was required to disclose in response to Plaintiff's Interrogatory 21, which sought the factual basis behind the Defendants' claim that she was not entitled to overtime. However, the Defendants did not disclose that factual basis, which is that, in his experience, Ms. Papkee's tasks should not have taken her as long as she claims they did. Because of this rank speculation and lack of prior disclosure, I disregard all of Mr. Lalumiere's statements as to the number of hours that he believes Ms. Papkee worked or should have worked. *See Torrech-Hernández v. Gen. Elec. Co.*, 519 F.3d 41, 47 n.1 (1st Cir. 2008) ("We are not obliged to take at face value Torrech's subjective beliefs when they are not factually based and merely constitute conclusory, self-serving statements.").

I also disregard Mr. Lalumiere's contentions that Ms. Papkee was not adequately performing her job. In denying Ms. Papkee's assertion that she was a competent employee, the Defendants rely only on Mr. Lalumiere's statements that he "learned that [Ms. Papkee] failed to properly review projects" and that her "failings as a project manager became increasingly obvious to [him] over time." Lalumiere Decl. ¶ 14. However, Mr. Lalumiere has never disclosed any information about how he learned this information. And it appears from the MHRC Documents that this information is not based on his personal knowledge, given his previous statements that he was "constantly berated through phone calls and emails for tasks that Ms. [Papkee] didn't do." Aff. of Scott Lalumiere ¶ 6 (ECF No. 62-2). The Defendants also identified in response to the Plaintiff's interrogatories five witnesses who they said would testify about the quality of Ms. Papkee's work. However, there are no statements of any of these witnesses in the summary judgment record. If the Defendants intended to rely on this information to support their opposition to the Plaintiff's motion, then it should have been turned over in discovery. And the fact that it was not means that it is excluded from being considered pursuant to the Discovery Sanction Order. Mr. Lalumiere cannot avoid the consequences of the Discovery Sanction Order by relying on hearsay that was otherwise discoverable. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

10

either moot (based on my earlier rulings) or they are meritless and do not warrant further discussion. I do, however, specifically address the Plaintiff's request to strike DSOMF ¶ 40 on the ground that it is incoherent. I agree. This statement of fact makes little sense, and despite having an opportunity to clarify this statement (after the Plaintiff lodged her objection), the Defendants chose not to do so. This statement of fact is stricken.

The only statements of fact that I have not yet addressed are the Plaintiff's statements of fact that I accept as true because the Defendants do not effectively refute them. That is, the Defendants' citations to the record (i.e., the Lalumiere Declaration) do not support the refutation, or the MHRC Documents contradict the cited portion of the Lalumiere Declaration being cited. Based on the Defendants' inadequate denial, I accept as true PSOMF ¶¶ 8, 10, 27, 28, 30, 33, 40, 42, 45, and

62[15] and parts of PSOMF ¶¶ 38,[16] 51,[17] 54,[18] 58,[19] and 69.[20] Similarly, while the Defendants purportedly deny PSOMF ¶¶ 39 and 41, the parts of the Lalumiere Declaration cited in support of these purported denials do not actually deny these

---

[15]    The Defendants offer no response to PSOMF ¶ 62. It is thus deemed admitted.

[16]    In PSOMF ¶ 38, Ms. Papkee contends that she asked many times to meet with MECAP's accounting manager (Christina Davis) and attorney to figure out what to do about MECAP's lack of evidence of its damages in the lawsuit. The Defendants deny this fact, citing to paragraph 16 of the Lalumiere Declaration. Defs.' Resp. to PSOMF ¶ 38 (ECF No. 51). However, the Lalumiere Declaration only denies that Ms. Papkee asked to meet with MECAP's attorney. *See* Lalumiere Decl. ¶ 16. I thus take as true that Ms. Papkee asked to meet with Ms. Davis.

[17]    In PSOMF ¶ 51, Ms. Papkee contends that, on January 10, 2019, she and Mr. Lalumiere were arguing about her failure to cooperate with his efforts to submit false information to the court in the lawsuit. The Defendants deny this fact, citing to paragraphs 15–19 and 23 of the Lalumiere Declaration. Defs.' Resp. to PSOMF ¶ 51. But while the Lalumiere Declaration denies that Mr. Lalumiere and Ms. Papkee had a dispute about engaging in fraud, it acknowledges that the damages calculation was the subject of this disagreement. Lalumiere Decl. ¶¶ 19, 23. I thus take as true that that was the subject of this conversation.

[18]    In PSOMF ¶ 54, Ms. Papkee contends that after this disagreement, she went to her seating area where she was crying and gathering her belongings. She also contends that Mr. Lalumiere followed after her and told her that he never touched her and never came after her. PSOMF ¶ 54. The Defendants deny this entire statement of fact, citing (apparently mistakenly) to paragraph 20 of the Lalumiere Declaration, which makes no assertions that are relevant to PSOMF ¶ 54. Defs.' Resp. to PSOMF ¶ 54. The Defendants likely meant to cite to paragraph 21 of the Lalumiere Declaration. But even so, in paragraph 21, Mr. Lalumiere only denies making the referenced statements (that he never touched or came after Ms. Papkee), Lalumiere Decl. ¶ 21, not the remainder of the statement of fact. As a result, I accept this statement of fact as true, except for the two referenced statements.

[19]    The Defendants both deny and qualify PSOMF ¶ 58. The Defendants' qualification is well-taken, but the denial is not. In PSOMF ¶ 58, Ms. Papkee says that she spoke to two coworkers about how Mr. Lalumiere tried to attack her and that she then took her belongings and left the office. The Defendants deny this statement of fact, citing to paragraphs 15–26 of the Lalumiere Declaration. Defs.' Resp. to PSOMF ¶ 58. The Lalumiere Declaration effectively denies Ms. Papkee's version of the confrontation—in particular, that Mr. Lalumiere tried to attack her. Lalumiere Decl. ¶ 19. However, Mr. Lalumiere never addresses the remainder of PSOMF ¶ 58, that Ms. Papkee told her coworkers what had happened. I thus consider that statement to be unrebutted, and I deem it admitted.

[20]    In PSOMF ¶ 69, Ms. Papkee asserts that the Defendants' "baseless counterclaims" cost her a lot of money to defend against. While the Defendants effectively deny that their defamation counterclaims were baseless, Defs.' Resp. to PSOMF ¶ 69 (citing Lalumiere Decl. ¶ 27), they do not deny that MECAP's other counterclaims were baseless or that Ms. Papkee spent a lot of money defending against the counterclaims. I take those aspects of PSOMF ¶ 69 as true.

statements of fact; they merely qualify them. I thus treat these statements as admitted, subject to the Defendants' qualifications.

## FACTUAL BACKGROUND

Given the above determinations, and bearing in mind my obligation to construe the record in the light most favorable to the Defendants and draw all reasonable inferences in their favor, *see EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021), I make the following factual findings.

Defendant MECAP is a loan brokerage, property management, and real estate development firm that buys and sells properties in Maine and New Hampshire and makes loans to commercial borrowers for construction projects. SMF ¶¶ 1, 3; DSOMF ¶ 2. Defendant Scott Lalumiere is the sole member of MECAP, but he was not the owner of the equity interest during the relevant time period. SMF ¶ 2; DSOMF ¶ 1. In October 2016, Plaintiff Erin Papkee began working for MECAP as a project manager. PSOMF ¶ 2.

Ms. Papkee was initially hired as an employee, and she worked full time under the control and supervision of Mr. Lalumiere, although she worked largely independently. SMF ¶¶ 5–6; DSOMF ¶ 4. Ms. Papkee was responsible for overseeing MECAP's construction projects, which required her to visit the construction sites. DSOMF ¶ 4; PSOMF ¶ 3. That meant that she had to drive hundreds of miles per week, often to remote locations, including on weekends. PSOMF ¶ 3; SMF ¶ 10. She was not paid for work-related mileage or tolls. SMF ¶ 10. Throughout Ms. Papkee's employment, she and Mr. Lalumiere would exchange work-related emails outside of

normal work hours. SMF ¶ 8. Ms. Papkee performed her work satisfactorily, and MECAP has no record of any complaints about her work. PSOMF ¶¶ 19–20.

Ms. Papkee routinely worked an average of forty-five hours per week, and she was paid a weekly salary of $960. PSOMF ¶¶ 3, 17–18; SMF ¶ 7. She was not paid overtime. PSOMF ¶ 3, 17–18; SMF ¶ 7. Mr. Lalumiere did not act to prevent Ms. Papkee from working more than forty hours per week. PSOMF ¶ 4. But Ms. Papkee never complained or suggested to Mr. Lalumiere that she was working more than forty hours per week, and had she done so, Mr. Lalumiere would have acted to find out why she was working so much, to correct issues with her work, or to otherwise reduce her hours. DSOMF ¶¶ 9, 12.

Around September 2018, Ms. Papkee told Mr. "Lalumiere that she wanted to change her status" because she wanted to pursue other opportunities besides her work at MECAP. DSOMF ¶¶ 11–12. She told Mr. Lalumiere that she believed she could provide similar project management services to other businesses in addition to the work she was doing at MECAP. DSOMF ¶ 13. She also complained about not being reimbursed for tolls and mileage. DSOMF ¶ 12. Based on this conversation, Mr. Lalumiere agreed to engage Ms. Papkee as an independent contractor and to increase her pay to $1,200 per week. DSOMF ¶ 14. Nothing else changed about the work she performed or where she performed her work besides this change in salary. PSOMF ¶ 8. Mr. Lalumiere controlled her work hours, where she worked, and how she performed her work. PSOMF ¶ 10. She had no opportunity to share in the profits or losses of MECAP. PSOMF ¶ 11. She made no investment in MECAP. PSOMF ¶ 12.

After September 2018, Ms. Papkee told Mr. Lalumiere that she intended to perform work for other companies and that she was pursuing her own projects. DSOMF ¶ 16. But she was not actually involved in her own real estate projects. PSOMF ¶ 16.

At some point in 2018, MECAP filed a lawsuit against one of its contractors, alleging that the contractor had failed to complete work for which it had been paid. SMF ¶¶ 12–13. MECAP obtained a default judgment, and an uncontested damages hearing was scheduled for December 5, 2018. DSOMF ¶ 19; PSOMF ¶ 23.

In the leadup to the damages hearing, Mr. Lalumiere prepared a spreadsheet of estimated costs. PSOMF ¶ 22. And he tried to submit that spreadsheet as evidence of damages at the hearing. PSOMF ¶ 23. When the judge asked Ms. Papkee if the numbers on the spreadsheet were accurate, she said that she could not confirm whether they were. PSOMF ¶ 26. The judge rejected Mr. Lalumiere's attempts to admit the spreadsheet into evidence and told Mr. Lalumiere that he needed to submit detailed invoices matching the checks paid to the new contractor and that the new contractor would need to testify to the truth and accuracy of the invoices and checks at a new damages hearing. PSOMF ¶¶ 27–29; SMF ¶ 14.

MECAP's accounting manager, Christina Davis, was not able to locate checks issued in the amounts on the spreadsheet, although she was able to locate checks issued to the new contractor. PSOMF ¶ 30; DSOMF ¶ 20. But because Ms. Davis routinely cut checks to this contractor for multiple concurrent projects without invoices and without clearly stating what the funds were for, some of these checks

may have encompassed payments made to the contractor for other projects than the one at issue in the lawsuit. PSOMF ¶¶ 42–43.

When Mr. Lalumiere told Ms. Papkee that the checks to the contractor were miscoded in QuickBooks and that Ms. Davis would need to fix these errors, Ms. Papkee understood him to be saying that he was going to instruct Ms. Davis to re-code checks paid for work on other projects to match the numbers on his spreadsheet. PSOMF ¶¶ 41, 44. She also believed that he was asking the contractor to make up a fraudulent bill to match his numbers. PSOMF ¶ 45.

Ms. Papkee believed that Mr. Lalumiere and MECAP were attempting to defraud the court by seeking damages that they were not entitled to (i.e., damages that were based on payments made for other projects), and she was not willing to participate in this presumed fraud. PSOMF ¶¶ 33, 42. In that same vein, she told Mr. Lalumiere that she was concerned about submitting false information to the court. PSOMF ¶ 36.

Ms. Papkee asked many times to meet with Ms. Davis to figure out what to do about the damages calculation. PSOMF ¶ 38. And she repeatedly told Mr. Lalumiere that they could not make the numbers on his spreadsheet work. PSOMF ¶ 39. Mr. Lalumiere told Ms. Papkee the numbers did not match because the construction project was not finished. PSOMF ¶ 40.

Mr. Lalumiere and MECAP were not actually trying to defraud anyone and did not encourage Ms. Papkee to engage in fraud. DSOMF ¶¶ 21, 26, 34. From Mr. Lalumiere's standpoint, he and Ms. Papkee had a difference of opinion about what

16

the judge wanted, and he grew frustrated with her inability to gather the necessary information for the second damages hearing. DSOMF ¶¶ 25–26.

On January 10, 2019, Ms. Papkee and Mr. Lalumiere were alone in the MECAP break room when an argument ensued about the damages calculation. SMF ¶ 15; PSOMF ¶ 51; DSOMF ¶¶ 27, 29. Ms. Papkee became angry and became uncooperative with regard to helping gather the information to support the damages calculation. DSOMF ¶¶ 27–28. Ms. Papkee contends that Mr. Lalumiere then tried to attack her. PSOMF ¶ 52. Mr. Lalumiere denies this, DSOMF ¶ 30, but it is uncontested that Ms. Papkee told two of her coworkers what had happened, PSOMF ¶¶ 57–58.

In the course of their argument, Mr. Lalumiere shouted at Ms. Papkee to "just go!" because he thought she needed to leave the office to compose herself. PSOMF ¶ 53; DSOMF ¶¶ 33, 35. Ms. Papkee left the room crying, and Mr. Lalumiere followed her. PSOMF ¶ 54. Ms. Papkee packed up her belongings and left. PSOMF ¶¶ 54, 56–58. After leaving the office, she did not return, and the Defendants did not encourage her to return. DSOMF ¶¶ 37, 38. Ms. Papkee was forced to resign. PSOMF ¶ 2.[21]

In January 2020, the Plaintiff filed the Complaint, asserting four causes of action—a violation of the Fair Labor Standards Act ("**FLSA**") (Count I) and Maine Wage Statute ("**MWS**") (Count II) due to the failure to pay overtime, a violation of the Maine Whistleblower's Protection Act ("**MWPA**") (Count III), and tortious

---

[21]     The Defendants admit PSOMF ¶ 2 in which Ms. Papkee states that "she was fired or forced to resign." Defs.' Resp. to PSOMF ¶ 2. Although they deny that Ms. Papkee was terminated, DSOMF ¶ 37, they never deny that she was forced to resign.

interference with Ms. Papkee's contract with MECAP (Count IV). Compl. (ECF No. 1). All counts are asserted against both of the Defendants, except the tortious interference claim, which is only brought against Mr. Lalumiere. The Defendants subsequently brought counterclaims against the Plaintiff for defamation (on behalf of both of the Defendants), breach of contract (on behalf of MECAP), and fraudulent or negligent misrepresentation (also on behalf of MECAP). Countercls. (ECF Nos. 14, 15). The Defendants filed these counterclaims after Mr. Lalumiere heard from several people that Ms. Papkee had defamed him and MECAP by saying that he had tried to engage in fraud and that he had assaulted her. DSOMF ¶ 39. Ms. Papkee responded by filing two reply counterclaims, for retaliation under the MWPA and Maine Human Rights Act ("**MHRA**"), as well as under the FLSA, alleging that the Defendants' counterclaims were baseless and retaliatory. Reply Countercl. (ECF No. 19).

Due to the failure of MECAP, health issues in Mr. Lalumiere's family, and travel restriction due to the COVID-19 pandemic, the Defendants claim they were not able to "devote the resources and attention necessary to pursue" their counterclaims, which is why the Defendants consented to their dismissal. Defs.' Resp. to Mot. to Dismiss 1–2; Recommended Dec. on Pl.'s Mot. to Dismiss & for Sanctions 3 (ECF No. 37). It cost Ms. Papkee a considerable amount of money to defend against the Defendants' counterclaims. PSOMF ¶ 69.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party . . . .' " *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case.' " *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). The moving party bears the initial burden of showing that no such dispute exists, and the nonmoving party must then respond "with sufficient evidence to allow a reasonable jury to find in its favor with respect to each issue on which it has the burden of proof." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (internal quotation marks omitted). Indeed, summary judgment "is the put up or shut up moment in litigation." *Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013) (quoting *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010)). A party opposing summary judgment must offer evidence in support of its contentions, not just a "self-serving affidavit and bald assertions." *Garmon*, 844 F.3d at 316.

In reviewing a motion for summary judgment, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *EdgePoint Capital*, 6 F.4th at 57. But I am "not obliged either 'to draw unreasonable inferences or credit bald assertions or empty conclusions.' " *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)); *see also Barros-Villahermosa v. United States*, 642 F.3d 56, 58 (1st Cir. 2011) ("Mere allegations, or

conjecture unsupported in the record, are insufficient." (internal quotation marks omitted)). When the evidence submitted in opposition to a motion for summary judgment consists of information in an affidavit, that affidavit must consist of more than "unsupported, speculative assertions."*Garmon*, 844 F.3d at 315. "[T]o the extent that affidavits submitted in opposition to a motion for summary judgment" fail to "provid[e] specific factual information made on the basis of personal knowledge, they are insufficient." *Id.* (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000)).

## DISCUSSION

## I.   **The FLSA and MWS Claims**

The FLSA and MWS both prohibit employers from requiring certain employees to work more than forty hours per week without paying them time and a half (1.5 times their regular hourly rate). 29 U.S.C. § 207(a)(1); 26 M.R.S. § 664(3). A claim for unpaid overtime pursuant to the FLSA requires a plaintiff to prove that she was employed by the defendant, her work involved interstate activity, and she performed work for which she was undercompensated. *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). The MWS makes clear that a claim for unpaid overtime under state law requires proof of the first and third elements (i.e., the non-jurisdictional elements). *See* 26 M.R.S. § 664(3). There is no dispute that Ms. Papkee's work involved interstate activity.

"To successfully oppose a properly supported motion for summary judgment, the non-moving party must demonstrate *specific* facts which establish a genuine issue

for trial." *Posadas de P.R., Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988). "Vague and conclusory statements in an affidavit do not meet the specificity requirement of Federal Rule 56." *Id.* The Defendants have presented no admissible facts with respect to the number of hours that Ms. Papkee worked. As a result, because they have not adequately rebutted her contention that she worked more than forty hours per week, I find that the Plaintiff has established that she performed work for which she was undercompensated.

That leaves only the first part of the analysis, whether Ms. Papkee was an employee of MECAP or an independent contractor. However, I need not conduct the analysis as to whether Ms. Papkee was an employee or independent contractor because the Plaintiff concedes that she must prove that her employer knew (or should have known) she was working in excess of forty hours. Pl.'s Mot. 6 & n.6; *see Manning*, 725 F.3d at 44. And a jury could find that Mr. Lalumiere was not aware that Ms. Papkee was working more than forty hours per week.[22] The motion for summary judgment on the FLSA and MWS claims is **DENIED**.

---

[22]     The Defendants also argue that Ms. Papkee was an administrative employee and thus was exempt from the overtime provisions of the Fair Labor Standards Act ("**FLSA**"). Defs.' Opp'n 2–3. However, I note that not only have the Defendants made no argument that this exemption has any applicability for the claim pursuant to state law, but, as the Plaintiff points out, this is an affirmative defense. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974) ("[T]he general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense . . . ."). As a result, it is waived if not raised in the answer. *O'Brien v. Town of Bellingham*, 943 F.3d 514, 527 (1st Cir. 2019); Fed. R. Civ. P. 8(c)(1). This affirmative defense was not presented in either of the Answers, Answers 8–9, and it is waived.

## II.    The MWPA Claim

To prove a violation of "the MWPA, a plaintiff must demonstrate: (1) that [she] was engaged in a protected activity; (2) that [she] suffered an adverse employment action; and (3) that a causal nexus exists between the activity and the adverse action." *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 19, 909 A.2d 629. Regardless of whether Mr. Lalumiere was actually trying to defraud the judge in the lawsuit (and I take as true his assertion that he was not), the Plaintiff has demonstrated that she *believed* that he was and that she told Mr. Lalumiere that she was concerned about submitting false information to the court. She has established that she engaged in protected activity. *See Bodman v. Me. Dep't of Health & Hum. Servs.*, 720 F. Supp. 2d 115, 124–25 (D. Me. 2010) (noting that protected activity includes complaining to an employer about something that she reasonably believes is a violation of the law (citing 26 M.R.S. § 833(1)(A))).

The Plaintiff has also shown that she suffered an adverse action when she was forced to resign after Mr. Lalumiere told her to "just go!" in the course of their argument about the damages calculation and he then watched her pack up her belongings and leave. I grant Mr. Lalumiere's contention that he did not intend to fire Ms. Papkee. But he does not deny that he forced her to resign, and that is sufficient for an adverse employment action.[23] *See Sullivan v. St. Joseph's Rehab. & Residence*, 2016 ME 107, ¶ 15, 143 A.3d 1283 ("Constructive discharge may be found

---

[23]    The Defendants have not argued that their contention that Ms. Papkee was an independent contractor affects whether she could suffer an adverse employment action. *See* Defs.' Opp'n 5 (restricting argument under Maine Whistleblower's Act to a dispute over material facts). Any argument to that effect has been forfeited. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

when, due to the actions of the employer, an employee's 'working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " (quoting *Lee-Crespo v. Schering-Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003))).

Given that Ms. Papkee was told to "just go" in the course of an argument with Mr. Lalumiere about the damages calculation, the timing is sufficient to infer a causal nexus. That shifts the burden to the Defendants "to produce some probative evidence to demonstrate a nondiscriminatory reason for the adverse employment action." *DiCentes v. Michaud*, 719 A.2d 509, 515 (Me. 1998); *accord Murray v. Kindred Nursing Ctrs. W. LLC*, 789 F.3d 20, 25 (1st Cir. 2015).

The only nondiscriminatory reason that the Defendants have offered is that Ms. Papkee did not perform her job well. However, the Defendants have offered no admissible evidence in support of this reason, and I cannot consider a reason that is entirely unsupported.[24] Ms. Papkee's prima facie case thus lies unrebutted, and she is entitled to summary judgment. The motion for summary judgment on the MWPA claim is **GRANTED**.

## III.   **The Tortious Interference Claim**

A "[t]ortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed;

---

[24]     Considering the evidence in the light most favorable to Mr. Lalumiere, I might be able to infer that he considered Ms. Papkee to be insubordinate for failing to gather the information for the damages calculation in the way that he thought appropriate and permissible. However, not only do the Defendants not argue that Ms. Papkee was fired for being insubordinate, they are adamant that she was never fired at all. They have thus not offered this as a nondiscriminatory reason for her forced resignation.

(2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104). Mr. Lalumiere disputes that he interfered with Ms. Papkee's employment contract through fraud or intimidation, since he denies that he engaged in any sort of fraud or intimidation (and he validly disputes the facts that the Plaintiff puts forward in an effort to prove that he was involved in fraud or intimidation). It is for a jury to decide who to believe. The motion for summary judgment on the tortious interference claim is **DENIED**.

## IV.    The Retaliation Reply Counterclaims

The FLSA and the MHRA both prohibit retaliation against an individual for opposing an unlawful employment practice. 29 U.S.C. § 215(a)(3); 5 M.R.S. § 4572(1)(E). The elements of both retaliation claims are typically described as being: (1) that the employee engaged in protected activity, (2) the employee was the subject of an adverse employment action, and (3) there is a causal link between the two. *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051 (MHRA); *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996) (FLSA). But the language of both statutes is broad enough to encompass adverse actions beyond employment actions, including retaliatory litigation. *See* 29 U.S.C. § 215(a)(3) (prohibiting an employer from "in any . . . manner . . . discriminat[ing] against any employee" who has brought a FLSA action); 5 M.R.S. § 4572(1)(E) (prohibiting an employer from "discriminat[ing] in any manner against individuals because they have opposed a practice that would be a violation of" the MHRA); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir.

2008) (holding that an employer filing a frivolous lawsuit against a former employee constituted an adverse action that could undergird an FLSA retaliation claim); *Thayer Corp. v. Reed*, No. 2:10-cv-00423-JAW, 2011 WL 2682723, at *21 (D. Me. July 11, 2011) ("[The MWPA's] protections would be hollow if an employer were free to exact retaliation against whistleblowers outside of employment.").

In any event, the Defendants have not disputed that the Plaintiff's reply counterclaims are legally sound. Rather, they argue that there remain genuine disputes of material facts as to whether the Defendants' defamation counterclaims were retaliatory. Defs.' Opp'n 6. I agree. A reasonable jury could find that Ms. Papkee defamed MECAP and Mr. Lalumiere when she told her coworkers that she thought MECAP was engaging in fraud and that Mr. Lalumiere had attacked her. As a result, I conclude that a jury could find that the Defendants had a good faith basis for asserting these counterclaims and that they were not retaliatory.

But the Defendants make no attempt to argue that MECAP's other two counterclaims (for breach of contract and fraudulent or negligent misrepresentation) were not retaliatory. *See* Defs.' Opp'n 6. Nor is there any information in the record to support the idea that they were not. That is, MECAP has put forth zero evidence (or argument) to support the idea that it had a good faith basis for bringing its breach of contract and fraudulent or negligent misrepresentation counterclaims. I find that the Plaintiff engaged in protected activity when she filed the Complaint and that MECAP took an adverse action against the Plaintiff by filing its breach of contract and fraudulent or negligent misrepresentation counterclaims. I also find that there is a

causal link between these events based on their timing and because there is no evidence that MECAP would have filed its frivolous claims but for the Plaintiff filing her Complaint. The motion for summary judgment on the retaliation reply counterclaims is **GRANTED** as to MECAP and **DENIED** as to Mr. Lalumiere.

## V.   Mr. Lalumiere's Personal Liability

Mr. Lalumiere also makes a cursory argument that he should not be personally liable for the Plaintiff's claims because he was not the equity owner of MECAP during the relevant time period. Defs.' Opp'n 6. But he fails to explain why his lack of equity ownership makes a difference and cites no law in support of his position. At the outset, I note that the cursory invocation of this argument is insufficient. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Id.* This argument is forfeited due to a failure to develop it.

Moreover, at least with respect to the FLSA claim, "liability attaches to any 'employer,' which is defined broadly to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' " *Manning*, 725 F.3d at 47 (quoting 29 U.S.C. § 203(d)). For example, "a corporate officer with operational control . . . is an employer." *Id.* (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). What is key is whether that officer has "caus[ed] the corporation to undercompensate" the employee. *Id.* (quoting *Baystate Alt. Staffing, Inc. v. Herman*,

163 F.3d 668, 678 (1st Cir. 1998)). And the First Circuit has characterized an individual's ownership interest as being "highly probative" and "a significant factor" in determining individual liability. *Id.* at 48.

It is uncontested that Mr. Lalumiere was the sole member of MECAP. And he also was able to control Ms. Papkee's hours[25] and her pay. As a result, any undercompensation of Ms. Papkee by MECAP is directly attributable to Mr. Lalumiere, and he is individually liable.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiff's motion for summary judgment (ECF No. 45). The Plaintiff's motion is **GRANTED** as to her MWPA claim (Count III) and as to her reply counterclaims against MECAP, and it is **DENIED** in all other respects.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 18th day of February, 2022.

---

[25] For example, Mr. Lalumiere has represented in the Lalumiere Declaration that had he known Ms. Papkee was working more than forty hours per week, he would have acted to reduce her hours.